IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CATHERINE BUNN<br>4518 Dewfield Dr N<br>Wilson, NC 27896<br>            Plaintiff,<br><br>       v.<br><br>NASH COUNTY PUBLIC SCHOOLS<br>930 Eastern Ave<br>Nashville, NC 27856<br><br>    **Serve also:**<br>    NASH COUNTY PUBLIC<br>    SCHOOLS<br>    C/O FRANK LAMM<br>    1601 Green Road<br>    Spring Hope, NC 27882<br><br>    -and-<br><br>NASH COUNTY PUBLIC SCHOOLS<br>BOARD OF EDUCATION<br>930 Eastern Ave<br>Nashville, NC 27856<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **<u>COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT</u>**<br><br>**<u>JURY DEMAND ENDORSED<br>HEREIN</u>** |

Plaintiff, Catherine Bunn, by and through undersigned counsel, as her Complaint against

Defendant Nash County Public Schools ("NCPS" or "Defendant"), states and avers the

following:

## **PARTIES**

1. Bunn is a resident of the city of Wilson, county of Wilson, state of North Carolina.

2. NCPS is a domestic corporation that operates a place of business located at 930 Eastern Ave,

   Nashville, NC 27856.

3. Bunn is a "person" within the meaning of 29 USC § 621(a).

4. Nash County Public Schools was at all times hereinafter mentioned an "employer" within the meaning of 29 USC § 621(b).

## JURISDICTION & VENUE

5. NCPS hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over NCPS comports with due process.

6. This cause of action arose from or relates to the contracts of NCPS with North Carolina residents, thereby conferring specific jurisdiction over NCPS.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to of 29 USC § 621 *et seq*.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Bunn's state law claims because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATIVE REMEDIES

10. Within 180 days of the conduct alleged below, Bunn filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2025-00892 against NCPS operating at 930 Eastern Ave, Nashville, NC 27856.

11. On or about September 30, 2025 the EEOC issued and mailed a Notice of Right to Sue letter to Bunn regarding the Charges of Discrimination brought by Bunn against NCPS in EEOC Agency Charge No. 433-2025-00892.

12. Bunn received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

2

13. Bunn has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Bunn has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Bunn is a former employee of NCPS.

16. At all relevant times herein, Bunn was over 40 years old.

17. Bunn is 61 years old.

18. NCPS hired Bunn on or about March 22, 2021.

19. NCPS hired Bunn as a Senior Finance & Accounting Analyst.

20. Bunn was qualified for her position as a Senior Finance & Accounting Analyst.

21. Bunn was qualified for her position as a Senior Finance & Accounting Analyst as a result of Bunn's skills and experience.

22. Bunn continued to be qualified for her position as a Senior Finance & Accounting Analysist throughout her employment.

23. Bunn continued to be qualified for her position as a Senior Finance & Accounting Analysist throughout her employment by meeting NCPS's legitimate expectations for Bunn's performance.

24. In or around October 2023, Shanice Sanders became Bunn's direct supervisor.

25. Sanders is 36 years old.

26. Sanders became NCPS's Interim Finance Director.

27. Sanders had the authority to discipline employees.

28. Sanders had the authority to discipline Bunn.

29. When Sanders became NCPS's Interim Finance Director, Sanders began to discriminate against Bunn on the basis of her age. ("Sanders's Discrimination")

30. Sanders's Discrimination included scrutinizing Bunn's work more harshly than her younger peers.

31. Sanders's Discrimination included meddling with Bunn's physical workspace.

32. Sanders did not meddle with the workspace of employees that were substantially younger than Bunn.

33. Sanders's Discrimination included refusing to provide Bunn necessary training.

34. Sanders's Discrimination was not conducted against any employee that was within ten years younger than Bunn's age.

35. In or around December 2023, Sanders conducted a mid-year performance review for Bunn.

36. Sander's mid-year performance review was negative.

37. In particular, Sanders's mid-year performance review alleged that Bunn "lacked accountability."

38. In particular, Sanders's mid-year performance review alleged that Bunn "hid money" in the NCPS ledger.

39. Bunn's performance for the mid-year performance review was in line with her prior performance.

40. Bunn's performance for the mid-year performance review met NCPS's legitimate expectations for Bunn's performance.

41. Bunn did not "lack accountability" for her position.

42. Bunn did not "hide money" in NCPS's ledger.

43. Sanders was discriminating against Bunn on the basis of her age.

44. Sanders was discriminating against Bunn on the basis of her age by issuing the negative mid-year performance review to Bunn.

45. Bunn appealed the negative mid-year performance review.

46. In Bunn's appeal, Bunn contested Sanders's negative mid-year performance review.

47. In Bunn's appeal, Bunn reported Sanders's disparate treatment on the basis of Bunn's age. ("Bunn's First Report of Discrimination")

48. Bunn made Bunn's First Report of Discrimination to NCPS's superintendent.

49. Following Bunn's First Report of Discrimination, Bunn was called into a meeting with Sanders in or around January 2024.

50. In the meeting with Sanders, Sheila Wallace and Roy Henderson were present.

51. In the meeting with Sanders, Bunn was accused of being unprofessional for making Bunn's First Report of Discrimination.

52. In the meeting with Sanders, Bunn was informed that Bunn could either resign or be terminated.

53. Bunn refused to resign in the meeting with Sanders.

54. Sanders terminated Bunn's employment.

55. Sanders terminated Bunn's employment because of her age.

56. Sanders terminated Bunn's employment because of Bunn's First Report of Discrimination.

57. Bunn appealed Sanders's termination of Bunn's employment to NCPS's school board immediately.

58. In Bunn's appeal to the NCPS school board, Bunn complained of discrimination. ("Bunn's Second Report of Discrimination")

5

59. In Bunn's Second Report of Discrimination, Bunn complained about discrimination on the basis of Bunn's age.

60. In Bunn's Second Report of Discrimination, Bunn complained about retaliation for complaining on the basis of Bunn's age.

61. NCPS's school board found Bunn had been wrongfully terminated.

62. NCPS's school board reinstated Bunn.

63. NCPS's school board ordered that Bunn be trained in the areas that Sanders alleged Bunn's performance was deficient in.

64. Bunn returned to work in or around February, 2024.

65. Following Bunn's return to work, Bunn discovered that Sanders had hired Penny Benson to replace Bunn.

66. Benson was substantially younger than Bunn.

67. Benson is fifty six years old.

68. Following Bunn's return to work, Bunn sought the training that NCPS had ordered Bunn to receive.

69. Bunn did not receive the training resources that NCPS ordered.

70. Instead, the training resources that NCPS ordered went to Benson.

71. Sanders sent Benson the training resources over Bunn because of Bunn's age.

72. Sanders's Discrimination continued after Bunn's reinstatement.

73. Sanders did not commit Sanders's Discrimination against Benson.

74. Sanders continued to discriminate against Bunn on the basis of Bunn's age following Bunn's reinstatement.

75. Sanders's Discrimination intensified following Bunn's reinstatement.

76. Sanders's Discrimination intensified by isolating Bunn.

77. In particular, Sanders's Discrimination intensified by forcing Bunn to work in the office printer room with no other employees present.

78. Sanders did not require Benson to work in the office printer room.

79. Sanders sent Bunn to the office printer room because of Bunn's age.

80. Sanders sent Bunn to the office printer room in retaliation for Bunn's First Report of Discrimination.

81. Sanders sent Bunn to the office printer room in retaliation for Bunn's Second Report of Discrimination.

82. Sanders's Discrimination culminated in or around June 2024.

83. In or around June 2024, Sanders issued a second negative performance review.

84. Sanders's second negative performance review mirrored the allegations from Sanders's first negative performance review.

85. Sanders's second negative performance review was vague.

86. Sanders's second negative performance review was based on personal differences Sanders had with Bunn.

87. Sanders's second negative performance review was not based on legitimate business expectations for Bunn's actual performance.

88. Sanders intended to cause NCPS to terminate Bunn's employment.

89. Sanders intended to cause NCPS to terminate Bunn's employment based on Bunn's age.

90. Sanders intended to cause NCPS to terminate Bunn's employment in retaliation for Bunn's First Report of Discrimination.

91. Sanders intended to cause NCPS to terminate Bunn's employment in retaliation for Bunn's Second Report of Discrimination.

92. Sanders used NCPS's superintendent as her "cat's paw" to effectuate her discrimination against Bunn on the basis of Bunn's age.

93. Sanders used NCPS's superintendent as her "cat's paw" to effectuate her retaliate against Bunn on the basis of Bunn's First Report of Discrimination.

94. Sanders used NCPS's superintendent as her "cat's paw" to effectuate her retaliate against Bunn on the basis of Bunn's Second Report of Discrimination.

95. NCPS's purported reason for Bunn's termination is pretext.

96. NCPS's purported reason for Bunn's termination is pretext for discrimination.

97. NCPS's purported reason for Bunn's termination is pretext for discrimination on the basis of Bunn's age.

98. NCPS's purported reason for Bunn's termination is pretext for retaliation.

99. NCPS's purported reason for Bunn's termination is pretext for retaliation for Bunn's First Report of Discrimination.

100. NCPS's purported reason for Bunn's termination is pretext for retaliation for Bunn's Second Report of Discrimination.

101. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Bunn.

102. Upon information and belief, Bunn's termination of employment, Defendants hired or retained an individual outside of Bunn's protected class to replace Bunn.

103. As a result of Defendant's conduct, Bunn suffered, and will continue to suffer damages.

### COUNT I: <u>AGE DISCRIMINATION IN VIOLATION OF THE ADEA</u>

104. Bunn restates each and every paragraph of this complaint as if it were fully restated herein.

8

105. Pursuant to 29 U.S.C. § 623(a), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's age."

106. At the time of Bunn's termination, Bunn was 60 years of age.

107. For the entirety of her employment with NCPS, Bunn was fully qualified for her position.

108. NCPS treated Bunn differently than other similarly situated employees who were outside the protected class.

109. After terminating Bunn, upon information and belief, NCPS replaced Bunn with a person who was significantly younger and/or did not belong to the protected class under the ADEA.

110. NCPS violated the ADEA by discriminating against Bunn based on her age.

111. In its discriminatory actions as alleged above, NCPS acted with malice or reckless indifference to the rights of Bunn, thereby entitling Bunn to an award of punitive damages.

112. To remedy the violations of Bunn's rights, secured by 29 U.S.C. § 621 et seq., Bunn requests that the Court award her the relief prayed for below.

## COUNT II: <u>RETALIATION IN VIOLATION OF THE ADEA</u>

113. Bunn restates each and every paragraph of this complaint as if it were fully restated herein.

114. Pursuant to 29 U.S.C. § 623(d), "It shall be unlawful for an employer to discriminate against any of his employees…because such individual…has opposed any practice made unlawful by this section."

115. NCPS terminated Bunn in retaliation for opposing discrimination.

116. In its discriminatory actions as alleged above, NCPS acted with malice or reckless indifference to the rights of Bunn, thereby entitling Bunn to an award of punitive damages.

117. As a direct and proximate result of NCPS's conduct, Bunn suffered and will continue to suffer damages.

9

**DEMAND FOR RELIEF**

WHEREFORE, Catherine Bunn demands from Defendants the following:

(a) Issue an order requiring NCPS to restore Bunn to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Bunn for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Bunn's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*

Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Catherine Bunn*

## JURY DEMAND

Plaintiff Catherine Bunn demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)